UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DENIS PASCUAL CHINCHILLA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | CAUSE NO. 3:26-CV-697-CCB-SJF |

**OPINION AND ORDER**

Immigration detainee Denis Pascual Chinchilla filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States. The warden answered the petition, and Mr. Chinchilla filed a reply. The petition is ready to be decided.

Mr. Chinchilla is a native and citizen of Honduras. ECF 6-2 at 3. On September 4, 2008, he entered the United States without inspection and was arrested by Customs and Border Patrol (CBP) and processed as an Expedited Removal. *Id.* He was removed from the country two weeks later. *Id.* He then reentered the United States in 2009 without inspection, and was again arrested and removed from the country. *Id.* In 2012, Mr. Chinchilla was arrested by CBP after he entered without inspection, and was removed months later. *Id.* at 3-4. In 2014, he reentered the country without inspection and was again removed. *Id.* at 4.

On January 18, 2017, Mr. Chinchilla was again arrested after he entered without inspection. ECF 6-2 at 4. He was initially processed as a Reinstatement of Removal Order,

but DHS then placed him in withholding-only proceedings. *Id.* On July 28, 2017, an immigration judge granted him bond and ordered his release pursuant to Immigration and Custody Enforcement's (ICE) Intensive Supervision Appearance Program. *Id.* After posting bond, he was released from ICE custody on December 11, 2017, under terms of supervision. *Id.*

On November 29, 2025, Mr. Chinchilla was arrested for theft in violation of his supervised release. ECF 6-2 at 5. Due to being arrested and charged with a crime, which violated the terms of his supervised release, ICE cancelled and revoked the 2017 bond granted by an immigration judge. *Id.* He was transferred to ICE custody. *Id.* At that time, ICE learned he had also been arrested for first-degree robbery in 2023. *Id.*

On March 12, 2026, ICE served Mr. Chinchilla with a Notice to Alien of File Custody Review, advising him that his custody status would be reviewed and that he could submit evidence in support of his release. ECF 6-2 at 5.

On May 28, 2026, an immigration judge denied Mr. Chinchilla's applications for relief in the withholding-only proceedings. ECF 6-2 at 5-6. Mr. Chinchilla appealed this decision to the Board of Immigration Appeals (BIA), and this appeal still is pending. *Id.*; ECF 8. Should the BIA dismiss his appeal, ICE intends to remove him to Honduras pursuant to his 2008 removal order. ECF 6-2 at 6.

On June 23, 2026, ICE conducted a 90-day Post Order Custody Review and determined that Mr. Chinchilla would be detained in ICE custody because he is a flight risk and has a pattern of criminal conduct. ECF 6-2 at 6. He has been detained since

December 2025, pending execution of his removal order. He currently is detained at Miami Correctional Facility.

Here, at the outset, the Warden argues Mr. Chinchilla's 2008 removal order is now a final order of removal, meaning his detention is governed by 8 U.S.C. § 1231(a)(6). Mr. Chinchilla does not dispute this argument in his reply and, in any event, the Warden is correct. Withholding-only proceedings "do not disturb the finality of an otherwise final order of removal." *Riley v. Bondi*, 606 U.S. 259, 272 (2025); *E.E.V. v. Blanche*, 180 F.4th 954, 962 (7th Cir. 2026) (recognizing that *Riley* abrogated prior contrary circuit precedent and explaining that a final administrative removal order becomes final even though withholding proceedings remain pending). Accordingly, Mr. Chinchilla's detention is governed by § 1231.

Section 1231 generally requires the government to remove a noncitizen within a 90-day "removal period" and requires detention during that period. 8 U.S.C. §§ 1231(a)(1)(A), (a)(2). Beyond the removal period, § 1231(a)(6) permits the continued detention of certain noncitizens, including inadmissible noncitizens and those whom the government determines to be a risk to the community or unlikely to comply with the removal order. *See* 8 U.S.C. § 1231(a)(6); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022).

But § 1231(a)(6) does not authorize indefinite detention. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court construed § 1231(a)(6) to authorize detention only for "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. Detention is presumptively reasonable for six months. *Id.* at 701. After

that period, a noncitizen may obtain relief if he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point "the Government must respond with evidence sufficient to rebut that showing." *Id.* The petitioner bears this initial burden. *See id.*; *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

Mr. Chinchilla has not met that initial burden. He does not address in his reply whether there is a significant likelihood of his removal in the reasonably foreseeable future. Nor does the record suggest that his removal is practically unattainable. ICE intends to remove him to Honduras if the BIA dismisses his pending appeal, and the record shows that the government previously succeeded in removing him from the country on four separate occasions.

The mere pendency of Mr. Chinchilla's withholding-only proceedings does not establish otherwise. Withholding-only proceedings are finite and determine only whether a noncitizen may be removed to a particular country; they do not call into question whether he may be removed from the United States. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 539-40 (2021). Accordingly, ordinary delays attributable to the adjudication of withholding-only relief generally do not, without more, establish that removal is not reasonably foreseeable. *See Vasquez Castaneda v. Perry*, 95 F.4th 750, 757-58 (4th Cir. 2024) (holding that even lengthy withholding-only proceedings did not establish a *Zadvydas* violation because the proceedings were finite and the delay resulted from ordinary litigation processes).

Nothing in this record suggests otherwise. If Mr. Chinchilla does not prevail before the BIA, there is no evidence of any diplomatic, logistical, or other impediment to his removal to Honduras. If he succeeds in obtaining withholding of removal to Honduras, that relief would prohibit his removal to Honduras but would not prohibit the government from removing him to an appropriate third country. *See Guzman Chavez*, 594 U.S. at 537. There is no evidence that the government would be unable to pursue that option if necessary. Thus, Mr. Chinchilla has not provided good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future, and his detention is not unlawful under *Zadvydas*.

Lastly, Mr. Chinchilla argues in his habeas petition and reply that his due process rights were violated because the government did not follow its own procedures in revoking his supervised release and detaining him. Specifically, he argues that (1) he was re-detained in December 2025 without being given "time to prove;" (2) he was told he would be released but remains detained; (3) he currently is detained without the possibility of release on bond; and (4) his signature was coerced for his departure.

"[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."). Regulations governing the revocation of post-order release provide that, upon revocation, the government must notify the noncitizen of the reasons for revocation and afford him an initial informal interview "promptly" after his return to immigration

custody so he may respond to those reasons. 8 C.F.R. § 241.4(l)(1). If the noncitizen remains detained following that interview, the regulations provide for a custody review that "will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3). That review includes "a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

Here, Mr. Chinchilla has not shown that any failure to comply with those procedures entitles him to habeas relief. The record does not establish whether ICE provided Mr. Chinchilla notice of the reasons for revocation or a prompt informal interview when he returned to immigration custody in November 2025. Moreover, ICE did not complete its Post Order Custody Review until June 23, 2026, approximately seven months after his release was revoked, even though § 241.4(l)(3) ordinarily contemplates review within approximately three months. Thus, the government may not have provided all of the contemplated procedures on the timetable set forth in the regulation.

But ICE has since conducted a Post Order Custody Review and determined that Mr. Chinchilla should remain detained because he is a flight risk and has demonstrated a pattern of criminal conduct. ECF 6-2 at 6. That subsequent review matters to the appropriate habeas remedy. *See Arej v. English*, No. 3:26-CV-713-DRL-SJF, 2026 WL 2110615 (N.D. Ind. July 22, 2026) (concluding that, although the government might not have provided the required notice and informal interview promptly after re-detention, a subsequent custody review afforded the detainee another opportunity to contest the revocation and rendered an order requiring the government to repeat the earlier

procedures purposeless). By contrast, when the government has failed altogether to initiate the custody review required by § 241.4(l)(3), conditional habeas relief requiring the government to provide that process may be appropriate. *See Hernandez Contreras v. Warden*, No. 3:26-CV-914-CCB-SJF, 2026 WL 2055987 (N.D. Ind. July 16, 2026).

Here, the government has already conducted the post-revocation custody review that would be the appropriate remedy for any earlier procedural omission. Requiring the government now to initiate another custody review, provide notice of reasons that already resulted in the June 23 custody determination, or conduct the preliminary informal interview contemplated by § 241.4(l)(1) would serve no useful purpose. And to the extent Mr. Chinchilla contends the June 23 custody review itself was procedurally inadequate, he has not developed such a claim or identified any specific deficiency in that review. Accordingly, even assuming the government failed to comply with the applicable revocation procedures promptly after Mr. Chinchilla returned to immigration custody, that alleged violation does not provide a basis for habeas relief at this stage.

For these reasons, the court **DENIES** the habeas petition (ECF 1) and **DIRECTS** the clerk to close this case.

SO ORDERED on September 18, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT